May it please the court. Good morning. Mark Anker Albert on behalf of the appellants, the debtor defendants Sherri Fu and the estate of her late husband Thomas Fu. This court is faced with three non-dischargeable money judgments totaling over 72 million dollars now with interest. They were ended based on a single summary judgment motion brought by one of the Fu's bank creditors, City National Bank. What's interesting about this case and makes it rare including in the absence of applicable case law is the fact that the summary judgment motion was served on the Fu's while they were incarcerated, indigent and pro se. Okay but you got time and you got to respond to the summary judgment so you got all of that right? That doesn't, the fact that we were able to at the 11th hour cobble together the best response that we could doesn't absolve the sophisticated creditor plaintiff from its own rule violations such as for example the violation of their requirement under local bankruptcy rule 7026 to serve with the summons and complaint a rule 26 notice advising the the debtor defendant of their discovery obligations. I just don't see why at most it's not harmless error where the Fu's ultimately filed a complaint in reason response to the summary judgment motion. The reason that it's not, the reason that it's not harmless error under rule 61, I mean evidence code 61 or an applicable case law is when you add up the series of concatenated rule violations together they serve to force the Fu's to railroad them into responding on drastically short notice to a what in this effective financial death sentence motion. If the Fu's had been given proper notice under with the summons and the complaint under rule 26 as it was required, if they were given the RAND notice which was also not given to them okay, if this motion had been served on them on their proper address which the sophisticated plaintiff could have found just by checking the Bureau of Prisons inmate locator right? But they did serve, it was served at the address that they had lodged. Right and we argue that this court is a court of equity and justice should rule that in the case of an incarcerated indigent pro se defendant that is insufficient for sophisticated civil plaintiff to rely solely on the failure of the incarcerated defendant to update its address but rather the last known address under rule 5 should be deemed to be the address that's on the prison of Bureau of Prisons inmate locator website. So what you're saying is a city national bank here shouldn't rely on the properly lodged address of the Fu's because it should know that the Fu's are in jail? Yes it did know the Fu's were in jail. They should know that the Fu's have no money? Well they knew that the banks put the Fu's in jail. And therefore they should call who to find out where the Fu's are? Yeah our position that in the unique circumstances where... Can you answer me my question? I'm Mr. City National Bank and I know that the Fu's are in jail. I know that they're out of money because they haven't paid off and so I pick up the phone who should I call to say well that address they've given me is probably not good. Now why do I think that? A sophisticated plaintiff suing an incarcerated indigent prosecutor... What about what what are the sophisticated what is what are the elements of sophistication which give notice to the plaintiff that in this circumstance the address is not good? It's not that it's that and that's what I'd like you to tell me. What about Fu's being broke and being improper and being in jail tells City National Bank the address which they've lodged is improper? The first notice in the record that the address was incorrect is when the Fu's Mrs. Fu's summary judgment papers were returned that's the that's the one item in the record that we know for sure put City's National Bank on notice. What we're advocating for is a new affirmative duty. We think that in a that the failure of a incarcerated indigent prose defendant to update their address should be liberally excused okay and B that the... So you're you said a new affirmative duty so you're asking for an extension of the law? My cross-examination skills sense that you're asking for an extension by what you just said as opposed to what the existing law requires. The existing law requires that in cases of prose defendants and civil cases that procedural errors are to be liberally excused. That is a well-established law okay. I'm saying that should also apply to the case where a civil defendant incarcerated prose fails to update their answer. Now there's one thing you said that caught my ear. There was a return of mail to CNB? Correct. How did that occur? Well they served they served their motion for summary judgment in with exactly 42 days as required under the applicable local bankruptcy rules and they served it on mail to the last address that the FOOs have put on their prose answers. They were incarcerated in separate federal correctional facilities. Okay one in Alabama one in Texas. He had since been released to a halfway house so the Mr. FOO never got the papers and she had been moved from Aliceville in Alabama to Victorville. So you're saying that the saying we couldn't serve we couldn't find her she wasn't at this place? Yes sir. And when was that done? Was it still before the period to answer? It's in the record I don't know I believe it was it was responded to them yes I think they got it back before him because they then retried to reserve it was returned again and they finally got the correct address. So what you're saying is that until it was finally served to where she was time shouldn't start running? What I'm going beyond that I'm saying your honor that that that the new law not just an application of existing law of leniency for procedural errors for inmates that new applications should be that in the case of a plaintiff suing seeking ruinous non-dischargeable money judgments against an incarcerated to me you're arguing structural error you say alley alley oxen free because of this. No I'm saying that this is one of a series of errors that they made that served to railroad the FOOs into responding on drastically short notice to a ruinous summary judgment motion okay and it's not immaterial and it's not irrelevant and it's not harmless error because if they've been given more time remember they're indigent they're in jail they have to seek third-party funding to hire me I wasn't retained previously okay so they have communication difficulties with the outside world they have to arrange funding and the fact that they're finally able to arrange funding to hire me to do an opposition in ten days okay we have no ability to meet with her we have to do the rule 56 motion for discovery on my own I don't even have time to get a declaration from the defendant puts it puts impossible pressure on an incarcerated civil defendant to adequately respond in time it sets a bad precedent for the future and the rule I'm talking about the required least they should a civil plaintiff should be required to check the prison a Bureau of Prisons inmate locator to make sure that a civil defendant that's incarcerated is getting served at the correct but then I guess it in terms of I I'm wondering how you get past the fact that both of them entered a plea you know and admitted fraudulent behavior and there was a date and so it would seem to me that that October what is it on October 8th date I think is it the plea agreement say on the date it's an October 2008 date yes okay it seems that two of that the judgments strictly fall within that that maybe your best argument would be that on on I think it was the ABA facility that maybe the October 8th didn't cover right that's correct and I mean it seems that there you know if if the October 2020 2008 covers the other two then how do you show whatever you would have discovered you know how could the result have been different the reason the case is not shut and the gavel doesn't come down even though judgments number one and two reflect loans that were made during the applicable time period in the plea agreement which is from October 2008 through June of 2009 was because while that may be dispositive as to the issue of non-discharge ability under section 11 USC 523 it is not dispositive as to the liquidation of the amount of the obligation okay so if the foes had been entitled to conduct discovery which we requested showing what happened to the fully 100% secured loans and the collateral that backed them up the amount of the loan the amount that the secured creditor actually obtained and therefore was owed and their their duty to mitigate those losses under the non-waivable obligation under article 9 of the Commercial Code would have come into play and we raised those arguments and preserved them on appeal with respect to the May 2008 130 million dollar ABL facility that falls outside the scope of the temporal of the temporal scope of the plea agreement now that's another error here with the bankruptcy court did with the imprimatur of the district court is they said because the plea agreement says on a date uncertain but at least since October 2008 that's what it says on a date excuse me on a date unknown but at least since October 2008 that's the operative language what the bankruptcy court did with the blessing of the district court on the interim appeal on judgment number one and two said that that's strongly suggestive of prior period fraud that ruling that ruling violates two cardinal principles okay one of the principles is that a plea agreement is a contract and the rule of contra pro forensum applies so if there's any ambiguity it should have been applied in favor of the foes and against the drafters okay the second rule is that a plea agreement must accurately reflect the totality of the defendant's misconduct here the fact that the the temporal language could be interpreted in favor of the foes it could have been because it could have meant that it commits some time in October on a date uncertain October 1st why is that interpretation not implausible or and entitled to deference by this court because if the fraud had earlier the amount of the fraud okay a 4.7 million would have been substantially higher it's critical because if it had been higher that would have impacted the foo sentencing and their restitution obligation instead they were given a sentence that reflected the relatively minor in terms of the bank's total loss amount of their of their overstatements and overdrawing 4.7 million and it was you're asking us to do the same that you're saying that they can't do I mean at best you it seems to me I don't know what that means what happened before October of 2008 but you're arguing your best argument to me is that you say that it's a tribal issue but right to resolve it but you're saying well it the play agreement means this and they're saying well it means that we do say argue with presents a tribal issue there's other errors for example the court disregarded mrs. who's corroborating testimony CNB claims the appellee claims that it was based on a sham declaration finding but no such sham declaration finding was ever made the inconsistency for the sham doctrine to apply has to be clear and unambiguous and here as I said because of the the proper application of the inferences in favor and opposing summary they would have had to make a finding and they didn't do that and it's not clear and unambiguous because there's waffling on the timing of whether it started the beginning of October or sooner and then secondly there was no discovery permitted and allowed for me to subpoena and depose either the prior accountants who verified the the the examiners that did comprehensive inventory audits and field audits that showed that the that there was adequate collateral in the form of inventory and accounts receivable to secure these loans and and that and the price Waterhouse Cooper's validation of the income and assets of the company in its in its tax returns no discovery was permitted on that and the FOOS declaration was summarily dismissed without making a prior a correct sham declaration finding all of these things together in improper application of the standards for the interpretation of a plea agreement together with the denial of our opportunity to conduct any discovery concerning the finances of the accuracy of the finances of the company prior to October 2008 together with a short notice all add up to a due process deprivation of just want to save any time for rebuttal yes your honor okay as much as your honor will give me thank you good morning morning court Michael Painter and Jeffrey Reisner on behalf of City National Bank will you be making all the argument yes okay thank you all of the material facts are undisputed and additional discovery or parties didn't change a thing the FOOS procured money under all three loans because they lied about their inventory and accounts receivable well okay I guess I guess just sort of jumping right to it and I'm only speaking for myself we haven't conferenced on this so I'm not it seems to me that the strongest argument that they make goes to the last contention under ABL in terms of I think in van at as Dale versus International Game Technology we stated that to disregard an affidavit for contradicting a prior statement the inconsistency must be clear and an unambiguous miss foos plea agreement did not state that the fraud began before October 2008 nor did it state that it began as early as May 2008 how does her statement in her declaration that the fraud began in October 2008 create a clear and unambiguous inconsistency with the plea agreement and there isn't a finding of a sham affidavit so that's the one that I'm saying how do you get around that one I mean other than that the court looked at it and said okay it clearly covers the other two this dog don't hunt let's just get rid of the whole thing and you know and made the assumption well it must have began before them actually the answer to that question I believe is relatively simple which is that mrs. Foos declaration doesn't show any issue of material fact at all when the fraud started whether it was May of 2008 or October 2008 first of all from a fundamental baseline it doesn't matter so you agree that it wasn't there is no finding that it was a sham affidavit I agree there's no finding there's a sham but there doesn't need to be and if I can explain for two reasons I'd like to try and do that the May 2008 loan is actually the ones the foos pled guilty to and said if the banks had known what was going on they wouldn't have given us the money and that's because of the interesting nature of the May 2008 loan as opposed to the other ones your honor is exactly correct the other two are covered the May 2008 is a revolving let's see if I understand you in the plea before the court on the bank fraud counts you're representing that in answer to the charge as to the May loan the foos admitted that the material they submitted to CNB was fraudulent yes and where do I find that in the record it's in the compendium of exhibits the it's for both Sheree and Thomas who give me the record citation of that would you please exhibits 25 and 26 and I will use the numbers from the I know the appeal is confusing because there are two separate appeals the Bates numbers from AER these are not exhibits to the plea agreement there are there the plea agreement itself pardon me I've got the plea agreement here tell me what about the plea agreement says that the foos admit to May 2008 fraud I'm sorry your honor to be clear they admit to fraud on the May 2008 loan okay the May 2008 loan as I hopefully can explain that we're in the plea agreement do I look to see that to confirm your statement it's an AER 4486 at 4490 for mrs. food 4426 of 4490 44 86 86 and 4490 at paragraph I believe it's between 10 and 14 the foos who met to fraud on this facility and that's because this facility is a revolving they submit declarations of what's called a borrower they say we have this much collateral we have this much inventory we have this much inventory in and they do that every month and each month they submit that that determines how much they can borrow that month they keep submitting them every month and they admit in the plea agreement as well as in their papers before this court they lied about it in October and November December 2008 all the way through June 2009 and on the basis of those repeated lies every month they got the banks to October 2008 he says she started with Eliza on October 2008 but that's on the May 2008 loan that's a living loan where it consists of them re-borrowing money from us every month maybe I'm not myself myself clear we're in the record is there an admission that in procuring the May 2008 loan the foos both of them admitted to committing bank fraud the foos admitted to committing bank fraud in the plea agreements because they and I have a plea agreement here and what I'm asking you Mr. Fainer is if you would be so kind to give me the page of 2-4 or 2-5 I'm sorry tell me where in that plea agreement does it say that the May 2008 loan was procured by bank fraud it does not say that the May 2008 loan at the beginning was procured by bank fraud but they got money under that loan document in the later months well but their acknowledgement of bank fraud started in October 2008 so if your claim is that they these loans these judgments are non-dischargeable because of fraud in the inception of the loan you've got to show me some evidence that at the inception of the May 2008 loan the representations that were made by the foos were false and I will show you that the at the inception of the loans we do have the evidence in the record that it is false however I do want to make the point that since it's a revolving loan they can lie after May 2008 and still cause our losses on that loan because we know for a fact they lied for at least nine months on that revolving loan they also lied to get the other two loans and that's established is your position that as to the May loan the consideration by the lender was not all made in May but it was made later on yes that's the nature of a revolving loan which is on the basis of the base borrowing certificates that they submitted to us was any loan made liquid and available to the foos by the lender on the May 2008 loan before October 2008 how much I'm not sure that is in the record I'm happy to submit something after this well following up on judge Callahan's question if there's no evidence in the plea agreement that the representations for the May 2008 loan were fraudulent and admitted to be fraudulent the money that was forwarded by the May 2008 loan until October 2008 would not be confessively fraudulent correct if it's not confessed by the plea there is whether mrs. Fu indicates that in her plea agreement or not well but maybe the thing to do is to remand this to the district court for the district court to make such a finding because I don't find it it is not required for judge Albert or judge Carney the district court or the bankruptcy judge judge Albert to make a sham declaration finding in order to find that the summary judgment needle hasn't been moved what mr. Albert did what judge Albert was to say here I am I'm looking at a new declaration one from mrs. food that says contrary to what the plea agreement says which says at least since October 2008 and now it remembers oh it is October 1 2008 what can I what can I do to go against all this evidence that the borrowing-based certificates never changed like the laws of nature or economics would command if a huge scale fraud which was admitted in in the plea 10 to 20 times or a hundred times the inventory and collateral if that started in October 2008 the numbers reported to the banks must have changed as a matter of physics and I believe that the US Supreme Court indicated that such implausible testimony unbelievable testimony contrary to the undisputed facts in the record does not prevent summary judgment in Anderson the Supreme Court said documents or objective evidence may contradict the witnesses story or the story itself may be so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it and the phrase the reasonable fact finder goes back to Anderson versus Liberty Lobby which says yes you have to be able to show that a reasonable jury would buy your story and the Supreme Court said again in Scott versus Harris when opposing parties tell two different stories one of which is blatantly contradicted by the record so that no reasonable jury would believe it a court should not adopt that version of facts for purposes of ruling on a motion of summary judgment now the respondents version of events there is so utterly discredited by the record that no and the court also said that in the Cleveland but you seem to be arguing that the admitted fraud from October 2008 forward was so egregious that no reasonable person would think that a loan was made on any other than a fraudulent basis in May of 2008 is that your point no with all respect okay pardon me I don't think it is your honor in terms of the loan there were three loans that went went into May 2008 October 2008 and then in 2009 the the banks provided that money however what's important is the non-justice chargeability standard in the bankruptcy code and it what's important about that is under the non-discharge ability provision it's either an extension or a renewal of credit that is based on fraud that isn't discharged in bankruptcy we don't let the debtors discharge that debt each month that loan was renewed the May 2008 one on the same basis of the same numbers the same fraudulent if I said hypothetically I've got a hundred thousand widgets sitting here to secure this loan in September and you can't find them the same statement that I have a hundred thousand widgets to secure this loan was made in May so that you have the same statement that happens to be admitted in September but it's the same statement that was made in May and there's not any evidence that would have shown that things have changed so much at the hundred thousand we just disappeared between May and October I could not have said it better myself your honor it's they keep repeating the same lie and keep getting money for the same lie under the revolving loan is there anything different about the ABL facility well the ABL facility it stands for asset-based lending so it's different because the other two were more standard loans asset-based lending the money comes in through the borrowing base or you the the FOOS report that their company has so much inventory well did the court make any is the court's basis for granting summary judgment on that loan did the court is the court's reasoning a little bit different than the other two yes it is and if so explain that to me okay the court said we'll give mrs. food the benefit of the doubt because we have this made till October 2008 time period all right so we will hold that's the reason he held open judgment on this May 2008 loan he said mrs. food you have the duty to come in and show me that the fraud was not ongoing during this period and he said just coming in and saying you deny it won't be enough because under rule 56 D and the family home factors which were recently affirmed by this court in the midtown flower bulb case you have to show that the facts exist and that they matter and the FOOS failed to show that any facts existed even after 16 months of discovery on this very loan that we're talking about but the court looked at her affidavit right the court looked at her affidavit and said I'm fine that it was a sham he did not use the word sham in his opinion that's correct but under Scott versus Harrison or Anderson he didn't have to because under the Liberty Lobby standard for rule 56 summary judgment just coming in and saying something doesn't mean that a reasonable jury is going to believe it and non-movement for summary judgment as the benefit for all unreasonable okay let me ask you this this is on a different that sort of where we started on the other side you on the FOOS counsel but their counsel did not formally appear as counsel in the CMP action till after receiving the motion how is that service timely and proper the service is timely and proper because mr. Albert had appeared at a Stateness conference in this adversary proceeding in August he had in September excuse me he is there is mr. anchor not did you say mr. Albert it's the same last name so the judge's name gets confusing sometimes oh okay anchor Albert Oh mr. anchor Albert okay all right so now we're not talking the judge we're talking that it's exactly all right and so he did appear in this adversary proceeding which is a subset of the FOOS bankruptcy he did appear at a status concert he also appeared as counsel of record in the u.s. trustee discharge ability proceeding and this is another reason why we know that the FOOS knew that rule 56 was a big deal because before City National Bank ever served their adversary proceeding mr. Albert was representing the FOOS in the other rule 56 non-discharge ability motion brought by the u.s. trustee that one the FOOS lost despite mr. Albert's advocacy because mrs. FOO had lied to the court and perjury is also a basis for finding a debt non-dischargeable so we served the FOOS at their last known address and we served mr. Albert and we served mr. Smiley who had been able to obtain two extensions of time to answer CNB's complaint so mrs. FOO is still alive but mr. FOO passed that's my understanding yes okay and I don't know if your honor wants me to explain any more but we served the the FOOS at the addresses that we had and that it worked for all our previous status reports and it worked for for everything else we served mr. Albert mr. Albert in his rule 56 D declaration indicated he did not pass on the material to the FOOS because he presumed that they had been served wherever they were he did not tell us that they had moved and now it sounds like mr. Albert is introducing a new federal rule of civil procedure where rule 5 doesn't apply and that an inmate locator website which even he admits in his rule 56 declaration may or may not be up-to-date is now a new requirement for serving folks in prison and that the rule of bankruptcy procedure saying the debtors address must be could I direct your attention to mr. Albert's bringing up the issue of one of the matters served was returned because mrs. FOO wasn't at that prison yes so when you got that what did you do then we did some of our own research this is in the Lyman declaration in the record as well as the the Applebee's appendix we looked for addresses where she might be we our own research and we sent it there contrary to what's in the briefs and what what I heard today mr. FOOS service copy was never returned there was no there was no return on that after serving the new prison that we found out about then the prison had some regulations that we should follow to write on the outside of the package certain things about open to be opened in the presence of the amity so we sent it again and if your honor was wondering about timeline I certainly have it here but I'm trying to find in I'm trying to deduce from this argument is how long before the hearing was actual service made on mrs. FOO the at her new prison location okay the hearing supplemental service at the new prison location was October 9th 2014 supplemental service with the additional writings November 4th the original service on the FOOS mr. Albert and mr. Smiley was October 23rd the response was November 13th as mr. Albert says in his declaration CNB's counsel offered to give mr. Albert another week he declined because there was no guarantee that judge Albert would move the hearing date all right thank you all right thank you unless my colleagues have any questions we've taken a little bit over your time thank you very much yes you have four minutes and 51 seconds with respect to the sherry food declaration a police seem to be arguing that notwithstanding the fact that there was no sham declaration finally by the court notwithstanding the fact that the purported inconsistency is not clear and unambiguous with respect to the timing of the fraud in relation to the plea agreement that the bankruptcy court was still entitled to completely disregard it because it was implausible because of the consistency and the barring base certificates that were provided what aptly fails to note however is that mrs. FOOS testimony was corroborated by independent third-party evidence that the bankruptcy court did not permit me to explore that went over previously with you previously namely that the audited financial statements that audited by a licensed CP the gate and firm the the tax returns of the company that were audited by so are there some assets well the judge Whaley said well if you said there was a hundred thousand widgets at the beginning and you lie about the hundred thousand widgets at the end maybe you were lying about the widgets at the beginning but here the inventory and asked the inventory both landed and in transit because sums in a warehouse and someone's on a ship and the accounts receivable were extensively audited and it's in the record including affirmed by CNB's own declarants that a comprehensive field audit had been done at the time but before the May 2008 ABL facility was approved in other words they went in and approved based on their comprehensive examinations that there was sufficient inventory and AR accounts receivable to justify the issuance of this hundred thirty million dollar loan and these are sophisticated banks that hired sophisticated audit specialists to conduct the inventory and accounts receivables that's a long answer to are there some assets yeah they were at that's what seems a fully hundred percent collateralized loan that was verified by independent audits conducted by the banks well no but I mean if the foos have no money I hope we're not fighting about nothing oh do the foos have money no the foos are still well the estate is in bankruptcy and mrs. foo are still in chapter 7 bankruptcy the bankers reactions have not hold a closed so there's very little chance that the banks will be collecting on this they're saying why are they fighting so hard that's something you have to address to mr. Fainer so my point on the food declaration is that the justification for disregarding the declaration even though there's no sham declaration finding and the requirements which are finding we're not met is does not hold water because of corroborating third-party evidence and the substance of her testimony as well then with respect to the service issue the fact I did not appear in the CNB action there was a there was a status conference in the US trustee action okay which I attended that day and right afterwards CNB came up and when I was at the podium judge Albert said would I be appearing as counsel for see for the foos in the CNB action and I told him I had not been retained yet and if you look at the tentative ruling that was adopted as a final opinion on for judgment number one and two he says service on the soon-to-be retained counsel which is a refutation the service on me at that time was as a matter of law consistent with being many corporations over the years and I represent individuals representation in one matter does that mean you're representing them in all the others okay and I was not represent had not represented her and was not retained until ten days before the motion response was due and so that was to itself then with respect to service on the foos esteemed counsel made clear before this court today that even when they tried to serve it it was sent back because they hadn't complied with Bureau of Prison service requirements for legal documents you have to say to be open in attorneys eyes only etc they didn't do it they didn't do it the first time I served it either right so even the first time they served even if they got the address wrong with 40 days they served exactly 42 days before the hearing was set which is the shortest notice possible it would have been incorrect because they didn't follow Bureau of Prison guidelines so we we believe that an injustice was done here there was a rush to judgment the bankruptcy court had made a finding that mrs. food lied to him when there wasn't when the underlying non-discharge when the underlying bankruptcy case with respect to the involuntary bankruptcy was supposed to go to trial she presented a trial declaration where she basically denied having committed fraud and the US trustee came in and I know 11 USC 727 action got a non discharge ability determination before this hearing before the summer jump was open where judge Albert had said that mrs. food lied to him and so she was not he was not going to grant her discharge so the bankruptcy judge who had tremendous respect for her very intelligent and thorough had already made a determination that miss foos a liar okay you're over time so please yeah so there was a rush to judgment and we hope this court will grant justice for your argument that this matter will stand submitted
judges: Callahan, Bea, Whaley